The document below is hereby signed.

Signed: June 27, 2010.



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re ) | | |
| ) | | |
| WILLIAM C. ADAMSON, ) | Case No. 09-00623 | |
| ) | (Chapter 7) | |
| Debtor. ) | | |
| _____ ) | | |
| ) | | |
| BRIAN T. HECK, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | Adversary Proceeding No. | |
| ) | 09-10042 | |
| WILLIAM C. ADAMSON, ) | | |
| ) | **Not for Publication in** | |
| Defendant. ) | **West's Bankruptcy Reporter** | |

MEMORANDUM DECISION RE MOTION TO DISMISS COMPLAINT

This addresses the defendant's motion to dismiss the complaint under Fed. R. Civ. Proc. 12(b)(6). For the reasons set forth below, I will deny the motion.

I

On July 20, 2009, the debtor, William Adamson, filed a voluntary petition for bankruptcy under chapter 7 of the Bankruptcy Code (11 U.S.C). Thereafter, the plaintiff, Brian Heck, instituted the above-captioned adversary proceeding seeking

to have the court declare his claim non-dischargeable under § 523(a)(2), (4) and (6) and further rule that a constructive trust imposed by a judgment was unaffected by Adamson's bankruptcy discharge, and that a related lis pendens remains in place.  The facts as alleged in the plaintiff's complaint are as follows.

Adamson and Heck were in a romantic relationship from 2002 to 2005.  During the relationship they lived together in a condominium at 2141 P Street, NW #506 ("P Street Property").  In 2002 Adamson signed, but did not record, a quitclaim deed naming Heck as a grantee of the P Street Property.  Shortly thereafter, the parties refinanced the P Street Property placing both names on the mortgage and Heck began paying half of all the mortgage payments thereafter.

In February 2005 the relationship ended and the parties orally agreed that the P Street Property would be sold and the proceeds split evenly.  In reliance on this agreement, Heck continued to make monthly mortgage, insurance, tax and condominium fee payments from the time he moved out in April 2005 until the property was sold in November 2005.  Leading up to the sale, Adamson continued to reassure Heck that he would receive half the proceeds from the sale and relying on these assurances Heck did not file a notice of lis pendens.  On November 18th, 2005, Adamson sold the P Street Property and ten days later used

the proceeds to buy a house at 2332 Naylor Road, SE Washington, DC ("Naylor Road Property"). Instead of informing Heck of the sale or his new purchase, Adamson told Heck's agent on November 28th that the closing for the P Street Property kept being put off and had not yet happened.

On May 9, 2006, Heck filed a complaint against Adamson for breach of contract, conversion, fraud, estoppel, constructive trust and unjust enrichment in the Superior Court of the District of Columbia. On February 25, 2008, Judge Odessa Vincent entered a judgment awarding $87,217.50 in damages against Adamson in favor of Heck for the breach of contract and conversion claims and imposing a constructive trust in favor of Heck against the Naylor Road Property.

II

Adamson does not contend that the claim relating to the constructive trust and the lis pendens should be dismissed, but instead seeks dismissal of the § 523(a)(2), (4), and (6) claims.[1] In his motion to dismiss Adamson sets forth three bases for dismissal: res judicata (claim preclusion), collateral estoppel (issue preclusion), and the statute of limitations. I will address each in turn.

---

[1] It appears that the property subject to the constructive trust may be worth less than the liens on the property, such that a constructive trust would yield Heck nothing.

A.

Adamson first bases his motion to dismiss on the doctrine of res judicata, or claim preclusion.  Specifically, Adamson argues that Heck's non-dischargeability complaint is barred because he previously filed a complaint in the D.C. Superior Court on the same set of facts, and did not, for example, include fraud in a fiduciary capacity as a basis for that complaint.

Section 523(c)(1) gives the bankruptcy courts exclusive jurisdiction to determine the dischargeability of debts excepted from discharge under paragraph (2), (4) or (6) of section 523(a). 4 Collier on Bankruptcy ¶523.29 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.); *see also In re DiGeronimo*, 354 B.R. 625, 639 (Bankr. E.D.N.Y. 2006) (Section 523(c) vests "the Bankruptcy Courts exclusive jurisdiction to make determinations of non-dischargeability under Sections 523(a)(2), (4), (6), or (15)").  Because Heck could not have brought a dischargeability action in D.C. Superior Court under § 523(a)(2), (4) or (6) of the Bankruptcy Code, his claim is not barred by res judicata and Adamson's motion to dismiss on this basis fails.

Furthermore, the Supreme Court has recognized the uniqueness of non-dischargeability actions in bankruptcy and exempted them from the doctrine of res judicata stating that "neither the interests served by res judicata . . . nor the policies of the Bankruptcy Act would be well served by foreclosing petitioner

4

from submitting additional evidence to prove his case." *Brown v. Felsen*, 442 U.S. 127, 132 (1979).  The Court viewed a non-dischargeability action as a creditor's attempt to meet "the new defense of bankruptcy which [debtor] has interposed between [him] and the sum determined to be due him," rather than an attack on the validity of the prior state court judgment. *Id.* at 133. Thus, the Court concluded that the "fact that a conscientious creditor has previously reduced his claim to judgment should not bar further inquiry into the true nature of the debt," and thus, "the bankruptcy court is not confined to a review of the judgment and record in the prior state court proceeding when considering the dischargeability [of a debt]." *Id.* at 138-39.

While Heck's non-dischargeability claim arises from the same set of facts as the previous litigation in D.C. Superior Court, the case law is clear that such non-dischargeability actions are not barred by res judicata.

B.

Adamson next argues that the doctrine of collateral estoppel, or issue preclusion, should bar certain issues from being relitigated.  Specifically, Adamson is concerned about the relitigation of any claim of fraud.  He argues that Heck should not be able to relitigate fraud or any claim that may have elements of fraud in this proceeding because Judge Vincent struck the fraud claim in a directed verdict in D.C. Superior Court.

5

In *Brown v. Felsen*, discussed above, the Supreme Court noted that its decision only concerned res judicata and not the narrower principle of collateral estoppel. *Id.* at 129 n.10. In *Grogan v. Garner*, the Supreme Court clarified that "collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)." 498 U.S. 279, 285 n.11 (1991). The Court did not explicitly say what those principles were, but it did reference the Restatement (Second) of Judgments (1982). *Id*. 284. Section 28 of the Restatement says that "[a]lthough an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances: . . . (4) The party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action; the burden has shifted to his adversary; or the adversary has a significantly heavier burden than he had in the first action." Restatement (Second) of Judgments § 28 (1982). Shortly after the Supreme Court's *Grogan* decision, the Eleventh Circuit ruled that "the principle of collateral estoppel dealing with differences in the burdens of persuasion must be included . . . in our list of collateral estoppel requirements." *In re Yanks*, 931 F.2d 42, 43 (11th Cir. 1991). The D.C. Circuit has also

adopted this view stating that "[c]ogent precedent supports the position that preclusive effect should not be given to the first determination when the party sought to be precluded had a heavier burden (or his adversary had a lighter burden) in the first proceeding than in the second." *Whelan v. Abell*, 953 F.2d 663, 668 (D.C. Cir. 1992) (internal quotations omitted).  The District of Columbia Court of Appeals follows the same approach. *See $345.00 in U.S. Currency v. District of Columbia*, 544 A.2d 680, 682 n.6 (D.C. 1988); *Ringgold v. District of Columbia Dept. of Emplymt. Servs.*, 531 A.2d 241, 243 n.3 (D.C. 1987); *Evans v. United States*, 417 A.2d 963, 964 n.4 (D.C. 1980).[2]

In *In re Chivers* the court was confronted with the same argument presented by Adamson in this case. 275 B.R. 606 (Bankr. D. Utah 2002).  In that case, the debtor argued that allegations of false representations and false pretenses were subsumed in the elements of actual fraud, and that previous litigation on a fraud

---

[2] This court is required to apply the collateral estoppel law of the District of Columbia, as the judgment at issue was entered by a court of the District of Columbia. *See Stanton v. District of Columbia Court of Appeals*, 127 F.3d 72, 77 (D.C. Cir. 1997).  This is not altered by the litigation being bankruptcy dischargeability litigation.  The federal courts routinely apply to bankruptcy dischargeability litigation the rule under such decisions as *Migra v. Warner City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984), that a federal court must apply the collateral estoppel law of the state in which the judgment at issue was rendered. *See, e.g.*, *Gayden v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798, 800 (9th Cir. 1995); *Rally Hill Productions, Inc. v. Bursack (In re Bursack)*, 65 F.3d 51, 53 (6th Cir. 1995).

7

count in state court, which he successfully defended against, should estop a creditor from bringing a non-dischargeability claim under § 523(a)(2). *Id.* at 618.

The court's ruling rested on the difference between the standard of proof needed to support a Utah fraud count and the standard needed to win a dischargeability action under § 523(a)(2).  In bankruptcy the "standard of proof for dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard." *Grogan*, 498 at 291. In Utah, however, the standard of proof for fraud is clear and convincing evidence.  Faced with these different standards, the court ruled that the previous state court action would not be given preclusive effect because "while the evidence against [the debtor] in the District Court Action was insufficient to meet the clear and convincing standard, it may be sufficient to meet the lesser preponderance standard in order to satisfy the requirements of § 523(a)(2)(A)." *Id.* at 618.

This court is faced with a similar situation in the present case.  The standard of proof for fraud under D.C. law is clear and convincing evidence, *In re Estate of Nethken*, 978 A.2d 603, 607 (D.C. 2009), while per *Grogan* the standard in a dischargeability action is preponderance-of-the-evidence.  Thus, the D.C. Superior Court's finding that there was not clear and convincing evidence to establish fraud against Adamson does not

8

control the outcome in a § 523(a)(2) dischargeability action in which the evidentiary standard is preponderance-of-the-evidence.

Adamson also argues that Judge Vincent's refusal to award punitive damages establishes that Heck did not sufficiently prove the element of malice, which must be found to award punitive damages. If Heck were precluded from relitigating the issue of malice then his claim of non-dischargeability under § 523(a)(6) would fail. Like fraud, however, proof by clear and convincing evidence is required to award punitive damages under D.C. law, *Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 937 (D.C. 1995), and again, *Grogan* governs the standard of proof in dischargeability actions. Thus, any D.C. Superior Court findings on the claims for punitive damages or fraud cannot be given preclusive effect in this dischargeability action since a higher standard of proof was applied in the previous litigation.

Heck has also sued for a determination that the debt is nondischargeable under § 523(a)(4) as one for fraud or defalcation in a fiduciary capacity. The Superior Court dismissed Heck's fraud claim on the basis that no fraud occurred, and if Heck is asserting the same factual grounds for fraud in a fiduciary capacity, he would be precluded under state law from obtaining a judgment for fraud in a fiduciary capacity. If a judgment for a monetary recovery based on fraud in a fiduciary capacity is barred, there cannot be a nondischargeable debt for

fraud in a fiduciary capacity.  In his motion, Adamson summarizes the fraud allegations in the Superior Court, but he has neglected to file a copy of the complaint in the Superior Court.  So we do not know whether the claims of fraud in the Superior Court match the claims of fraud in a fiduciary capacity in this court.  Moreover, § 523(a)(4) makes nondischargeable as well any debt for defalcation in a fiduciary capacity.  "[A] 'defalcation' for purposes of this statute does not have to rise to the level of 'fraud,' 'embezzlement,' or even 'misappropriation.'" *Quaif v. Johnson*, 4 F.3d 950, 955 (11th Cir. 1993) (citing *Central Hanover Bank & Trust Co. v. Herbst,* 93 F.2d 510, 512 (2d Cir. 1937) (Learned Hand, J.)).  Accordingly, if the debt arose from defalcation in a fiduciary capacity, collateral estoppel does not bar Heck's § 523(a)(4) claim.

Heck also asserts that the claim is nondischargeable under § 523(a)(4) as a debt for larceny.  Adamson contends that fraud is an element of larceny, citing *United States v. Dixon*, 469 F.2d 940 (D.C. Cir. 1972), and that Heck could not recover a monetary judgement for larceny because his fraud claims have been dismissed.  But Heck did not sue on larceny in the Superior Court, and we do not have the complaint in the Superior Court to enable us to ascertain whether the allegations of fraud in the Superior Court match the fraud upon which Heck would rely in seeking to bar dischargeability based on larceny.

C.

The last argument Adamson makes is that the statute of limitations has run on Heck's claim that Adamson breached a fiduciary duty.  Heck is not filing an independent action for breach of fiduciary duty in a state court, but rather opposing the discharge of a debt under § 523(a)(4), which provides that a debt for fraud or defalcation while acting in a fiduciary capacity is not dischargeable.  If Heck can establish that Adamson's debt arose from fraud or defalcation while acting in a fiduciary capacity, res judicata will not bar the § 523(a)(4) claim for reasons previously discussed.  Pursuant to Rule 4007(c) of the F. R. Bankr. P., a complaint to determine the dischargeability of a debt under § 523(a)(4) must generally be filed no later than 60 days after the first date set for the meeting of the creditors under § 341(a).  In this case, the creditors' meeting was held on August 27, 2009, making the deadline to oppose dischargeability October 26, 2009.  Heck's complaint was filed on that day and, therefore, was timely filed.

III

The doctrine of res judicata, or claim preclusion, does not apply to non-dischargeability proceedings in a bankruptcy case.  Collateral estoppel does apply, but in this case the prerequisites for applying it are not satisfied since the standard of proof for the issue sought to be precluded is lower

in bankruptcy than in the previous forum.  The claims in this adversary proceeding were also brought within the applicable statute of limitations.

IV

Pursuant to the foregoing, it is

ORDERED that the defendant's motion to dismiss is denied.

[Signed and dated above.]

Copies to: All counsel of record.